Ada L. DANIELS and The Raleigh County Bank, as Committee for Nathan G. Daniels, a mental incompetent, Appellants,

v.

HORACE MANN MUTUAL INSURANCE COMPANY, Appellee.

No. 13327.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1969.

Decided Feb. 13, 1970.

Donald D. Hodson, Beckley, W. Va. (Bowers, File, Hodson & Payne, Beckley, W. Va., on brief), for appellants.

J. Campbell Palmer, III, Charleston, W. Va., for appellee.

Before BRYAN and BUTZNER, Circuit Judges and WIDENER, District Judge.

ALBERT V. BRYAN, Circuit Judge:

For failing to settle a claim against them for an automobile personal injury, Ada L. Daniels and the committee for her incompetent husband, Nathan G. Daniels, sued the Horace Mann Mutual Insurance Company, their insurer, for the amount by which the judgment exceeded the limit of their liability policy. In a jury-waived trial, the District Court denied recovery and they appeal.

The contract, issued to Ada L. Daniels as the car owner, gave protection against responsibility due to negligence of the insured and her husband with a maximum coverage of $10,000 for injury to one person and $20,000 for all persons injured in a single accident. The company covenanted to defend, at its expense, any suits against the insured upon claims of this kind, but it reserved the right to settle them.

While driven by Nathan Daniels in West Virginia on October 14, 1966, the car struck 16-year old Victoria Williams and broke her arm. An action in the State court against Nathan and Ada Daniels was appropriately brought to recover for her injuries and for her father's outlays in medical and hospital expenses on her behalf. Indemnity of $85,000 was asked.

The company undertook the defense of the Williams' action but upon investigation became persuaded that Nathan Daniels was grossly at fault. At a pretrial conference the trial judge entered a finding that Nathan's negligence was the cause of the accident. Hence the quantum of the damages was the only issue to be resolved. The jury awarded $25,000 to Victoria and $880 for her father's expenditures. Judgment was passed upon the verdict and was not altered on appeal. The insurance company paid $10,000 towards its satisfaction. When the plaintiffs demanded payment from the defendants of the unpaid balance, the present action followed.

In a controversy of this kind the insured can succeed only if the insurer's failure to settle within the indemnity provided is ascribable, as generally said, to its negligence or bad faith. See, e. g., Annot., 40 A.L.R.2d 168 (1955); Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954). West Virginia's highest court, by whose rulings we are bound in this diversity case, has not definitively declared whether both or which, if only one, of these factors must be shown. It was the District Court's belief that the State Supreme Court when called upon for a decision would join those jurisdictions—a majority at one time but now possibly the minority—adopting the good faith doctrine. See, 7A Appleman, Insurance Law and Practice, § 4712, p. 562 (1962). But see, 40 A.L.R.2d 168, 171 (1955).

For this forecast the Court specially noted the espousal of this view by Virginia, as enunciated in Aetna Casualty & Surety Co. v. Price, 206 Va. 749, 146 S.E.2d 220 (1966). Good faith and negligence, as determinants, "have tended to coalesce", 40 A.L.R.2d 168, 171, and today there is "more of a difference in verbiage than there is in result", 7A Appleman, Insurance Law and Practice § 4712, p. 561–62 (1962). See also 67 Harv.L.Rev. 1136, 1140 (1954). In this case we find a choice unnecessary.

For exposition of the insurer's obligation, both the Virginia court and the opinion of the District Judge referred to Radio Taxi Service, Inc. v. Lincoln Mut. Ins. Co., 31 N.J. 299, 157 A.2d 319, 322–323 (1960), where it is said:

"* * * [T]he obligation assumed by the insurer with respect to settlement is to exercise good faith in dealing with offers of compromise, having both its own and the insured's interests in mind. And it may be said also that a *reasonably diligent effort must be made to ascertain the facts* upon which a good faith judgment as to settlement can be formulated. * * *

"* * * A decision not to settle must be an honest one. It must result from a weighing of probabilities in a fair manner. * * * Where reasonable and probable cause appears for rejecting a settlement offer and for defending the damage action, the good faith of the insurer will be vindicated. * * *" (Accent added.)

True, the Court there found for the insurer but, nevertheless, it lucidly outlined the pertinent law. The discussion in Dumas v. Hartford Acc. & Indem. Co., 94 N.H. 484, 56 A.2d 57, 60 (1947) is also helpful.

In short, the demand of care and good faith arises from the dual and delicate position of the insurer. In its hands at one and the same time are its own and the interests of the insured. If not technically, certainly practically, a trusteeship is posed. Selfishness will not be tolerated, yet the insurer is not to be held for a sincere mistake of judgment.

█ The District Judge looked, too, at American Casualty Co. of Reading, Pa. v. Howard, 187 F.2d 322, 329 (4 Cir. 1951). Although it involved the law of South Carolina, Judge Dobie laid down a test which seems to be acceptable as a general proposition: that if the insurer acted "reasonably, in good faith and without negligence in refusing proffered settlements" it met its obligations to the insured. This pronouncement is our text for decision presently. It provides an understandable and a workable formula. Cf. Gaskill v. Preferred Risk Mut. Ins. Co., 251 F.Supp. 66, 68 (D.C.Md.1966), aff'd per curiam 371 F.2d 792 (4 Cir.).

█ That the appellee insurer did not act "reasonably, in good faith and without negligence in refusing the proffered settlement" readily appears from the uncontested circumstances. They require the conclusion that the District Court's contrary ultimate finding—whether considered as one of fact or law—was clearly erroneous. Now recounted, the subsidiary facts found by the trial court disclose the absence of a full grasp, by the insurer throughout, of the gravity of the Williams' cause against the insured and culpable neglect in defense.

To start with, the investigation was, in certain respects, inadequate. The insurance company appears to have conducted the pretrial negotiations under the mistaken impression that the injury was no more than a slightly complicated arm fracture. Actually, it was a comminuted break, involving the median nerve followed by a limited paralysis of the right hand. One of her doctors testified to the uncertainty of a permanent cure. She was physically unable to continue in high school for the remaining seven or eight months of her senior year. Mental and bodily pain was experienced. Yet the insurance company never sought independent professional opinion in diagnosis or prognosis of her hurt. It was content to allow plaintiff's evidence of the extent of the injury to go uncontested at trial and introduced no evidence whatsoever of a mitigating nature.

█ Next, no serious negotiations toward settlement were pursued by the insurer, a firmly recognized responsibility of the insurer. E. g., Young v. American Casualty Co., 416 F.2d 906, 910–911 (2 Cir. 1969); Abernethy v. Utica Mut. Ins. Co., 373 F.2d 565, 569 (4 Cir. 1967). The Williams' attorney initially tendered a compromise of $16,000. After learning of the $10,000 policy maximum, he advised his clients that $8,000 was a realistic figure. Prior to the trial the attorney clearly indicated to the insurer that he would settle within the policy limits, making a firm offer of $9,500. His omission to tell opposing counsel of the willingness to take less was, he explained, because the insurer had never inquired whether the Williams would consider a smaller figure. But the District Court found that he "allegedly mentioned to the company's claims representative that his clients would probably settle for $8,000".

Its adjuster reported to the company he thought it would have to pay in the range of $7,500 to $8,000. The insurer first authorized its lawyer to settle for $3,000. This offer was refused as "insulting". The authority was then raised to $5,000, and finally to $7,500, but prior to trial the company's lawyer submitted nothing higher than $4,500. During trial he mentioned $5,500, in a manner characterized by the plaintiff's attorney as "perfunctory". He testified that he had recommended to the company that he be given the authority to go to $7,000, but the company never authorized him to offer more than $5,500.

The insured seems to have received little consideration from the company or its lawyer. Both the claims manager

and lawyer testified that they had given no consideration to the possibility of a recovery greater than the policy limits. Although Ada Daniels and her husband's committee constantly pressed the insurer to compose the claim, she testified that she was not kept abreast of any negotiations to that end. On visits to the insurer's attorney, she was always assured that there would be a settlement within the policy limits. Admittedly, the usual "excess letter" informed her that, as the claim was more than the policy coverage, she might procure her own attorney but later she was told it was unnecessary.

■ Lastly, the probability of liability is, obviously, a foremost consideration in deciding whether to settle. Cf. Abernethy v. Utica Mut. Ins. Co., supra, 373 F.2d 565, 569 (4 Cir. 1967). Here liability had been confessed. In this circumstance the jeopardy of the insured demanded more than ordinary solicitude. The company thus knew it *had to pay*. The only question was how much. No commensurate exertion on the insured's behalf is manifest or demonstrated.

Nor after the Williams had won at trial was there any earnest attempt to appeal or settle. Even at that stage settlements are not uncommon. The party winning at nisi prius may prefer to take a sum below the verdict to avoid an appeal. It is a ripe time to discuss settlement.

■ Thus, the insurer from beginning to end did not act "reasonably, in good faith and without negligence". To summarize: (a) there was only a superficial investigation; (b) there was no serious attempt to settle; (c) the company did not accept the recommendations of its counsel and agents as to the amount it should offer in settlement of the case; (d) there was only scanty consideration given to the insured's predicament; and (e) there was neglect in appraising the danger of the outstanding determination of liability. In a closely resembling factual situation the Court in Gaskill v. Preferred Risk Mut. Ins. Co., supra, 251 F.Supp. 66 (1966), aff'd.

per curiam 371 F.2d 792 (4 Cir.), came to the same conclusion. Accord: Herges v. Western Cas. & Sur. Co., 408 F.2d 1157 (8 Cir. 1969).

Judgment must go for the appellants in the amount of the unpaid balance of the Williams' recovery.

Reversed with final judgment.