Rodney WEESE; Maude Weese, Plaintiffs-Appellants,

v.

NATIONWIDE INSURANCE COMPANY, an Ohio corporation, Defendant-Appellee.

No. 88-3117.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1989.

Decided June 27, 1989.

Peggy L. Collins (Larry G. Kopelman, Kopelman, Clark & Collins, Charleston, W.Va., on brief), for plaintiffs-appellants.

Mary Hylton Sanders (Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W.Va., on brief), for defendant-appellee.

Before WILKINSON, Circuit Judge, and HAYNSWORTH and BUTZNER, Senior Circuit Judges.

BUTZNER, Senior Circuit Judge:

Rodney and Maude Weese appeal from the district court's dismissal of their action against Nationwide Insurance Company. The Weeses were insured under an automobile insurance policy issued by Nationwide that included an endorsement covering them for injuries caused by uninsured motorists. After an accident in which Mr. Weese suffered injuries due in part to the negligence of an uninsured motorist, he filed a claim with Nationwide, relying on the uninsured motorist provision in his policy. Nationwide refused to settle the claim on terms satisfactory to the Weeses. They then sued the uninsured motorist. Nationwide assumed defense of the claim against the uninsured motorist as permitted by W.Va.Code § 33–6–31(d). The jury returned a verdict of $201,000 in favor of the Weeses. Nationwide paid them the policy limit of $100,000 in partial satisfaction of the judgment.

The Weeses brought this action alleging that Nationwide, in its conduct throughout their attempt to recover on the uninsured motorist endorsement, acted in tortious bad faith, breached the contract of insurance, and committed unfair trade practices in violation of the West Virginia Unfair Trade Practices Act, W.Va.Code §§ 33–11–1—33–11–10 (1982). The district court dismissed the Weeses' suit, saying:

Nationwide's obligations to the plaintiffs under the uninsured motorist provision of the policy did not arise until there was a legal determination of the liability of the uninsured motorist and the damages sustained. Only after that determination was made did the relationship resume the normal posture between insurer and insured; until that point the relationship was adversarial, and hence there was no fiduciary relationship or duty of good faith. For these reasons, Nationwide's motion to dismiss is granted.

Although the West Virginia Supreme Court of Appeals has not decided the precise issue presented by this appeal, it has carefully analyzed uninsured motorist coverage and explained the obligation of insurance companies arising out of policies that afford another type of first party protection under which benefits are directly payable to the insured. The Court's opinions and well-reasoned cases from other jurisdictions afford adequate grounds for deciding whether the Weeses have a cause of action under West Virginia law.

We conclude that under West Virginia law Nationwide owed the Weeses a contractual duty of good faith and fair dealing from the time they presented their claim and that Nationwide was subject to the West Virginia Unfair Trade Practices Act. We agree with the district court that West Virginia would not permit recovery against Nationwide in an action based on tort. Accordingly, we affirm in part, vacate in part, and remand the case for further proceedings.

## I

We first consider the Weeses' claim that Nationwide breached their insurance contract. West Virginia requires every motor vehicle policy to provide that the insurer will "pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars" because of bodily injury or death. W.Va.Code § 33–6–31(b) (1982). In *Lee v. Saliga*, 373 S.E.2d 345 (W.Va.1988), the Supreme Court of Appeals explained that uninsured motorist insurance, like other insurance, is a contract between the insurer and insured that must conform to state law. The policy provides " 'first party' protection to the insured—that is, the insurer promises to pay the benefits of all meritorious claims to the insured." 373 S.E.2d at 348.

Inherent in every insurance contract is the obligation of each party to deal fairly and in good faith. *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir.1986); *Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 801 (Utah 1985). West Virginia, in common with other states, has applied this precept to insurance contracts affording, as here, first party protection. In *Hayseeds, Inc. v. State Farm Fire and Casualty*, 352 S.E.2d 73 (W.Va.1986), the insurer resisted paying a fire insurance claim, asserting the defense of arson.[1] The Supreme Court of Appeals affirmed a judgment for the insured that awarded not only damages for the insured's net economic loss caused by delay in settlement but also an award for aggravation and inconvenience and reasonable attorneys' fees. The Court justified its award of attorneys' fees by saying that "when an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." 352 S.E.2d at 79. The Court set aside an award for punitive damages because the acts of the insurance company did not constitute an independent tort apart from its breach of contract. In order to recover punitive damages, the Court explained, the insured must show that "the company actually knew that the policyholders' claim was proper, but willfully, maliciously and intentionally denied the claim." *Hayseeds*, 352 S.E.2d at 80–81. The Court cautioned that an award for aggravation and inconvenience should not amount to "punitive damages ... awarded under another sobriquet." 352 S.E.2d at 80.

---

1. Fire insurance provides first party protection. "[T]he insurer promises to pay the benefits of all meritorious claims directly to the insured." *Lee*, 373 S.E.2d at 348.

Nationwide contends that uninsured motorist coverage affords only hybrid first party protection because the relationship between the insurer and insured is adversarial until the insured recovers a judgment against the uninsured motorist.

We reject this argument. Nationwide fails to recognize that all first party claims are adversarial. The insurer wishes to minimize payment and the insured wishes to maximize it. *Hayseeds* illustrates the fallacy of Nationwide's contention. There the insurer and the insured were engaged in a bitter contest. A charge by the insurer that the insured destroyed his property by arson assuredly places the parties in an adversary relationship. Nevertheless, the Court held the insurer to its contractual obligations of fair dealing in settlement negotiations.

■ *Lee* also puts Nationwide's argument to rest by declaring that uninsured motorist coverage affords first party protection. The Court did not qualify this description by terming the protection hybrid. 373 S.E.2d at 348. *Lee* and *Hayseeds* read together indicate that an insurer's contractual obligations of good faith and fair dealing apply to negotiations for settlement.

Nationwide asserts that *Davis v. Robertson,* 332 S.E.2d 819 (W.Va.1985), stands for the proposition that an insurance carrier owes no obligation to its insured under the uninsured motorist provisions of the policy until after the insured obtains judgment against the uninsured motorist.

■ Nationwide's argument finds no support in *Davis.* *Davis* dealt with an issue common to all motor vehicle litigation —the propriety of injecting insurance into an action for damages, arising not from the insurance contract but from a tort. *Davis*'s resolution of the issue was to apply the rules that had been followed for years in motor vehicle litigation. In accordance with West Virginia's practice of avoiding mention of insurance at trial in cases involving motor vehicle accidents, *Davis* held that the insured cannot join his insurance carrier in his action against an uninsured motorist, nor can he bring a direct action against his insurer until after he has obtained a judgment against the uninsured motorist. An action by an insured against his insurer for unfair settlement practices with respect to a claim made under the uninsured motorist provisions of his policy is governed by the same principles that prohibit an insured from bringing an action against his liability carrier for unfair settlement practices until after a judgment has been entered against the insured. *See Davis,* 332 S.E.2d at 823–24; *Lusk v. Doe,* 338 S.E.2d 375, 379–80 n. 4 (W.Va.1985). *Davis* does not exonerate an insurance company from its contractual obligation of fair dealing and good faith that arises from the inception of the contract.

■ West Virginia's analysis of uninsured motorist coverage in *Lee* and its enforcement of the insurer's obligation with respect to first party protection in *Hayseeds* accord with the reasoning of cases that have dealt with an insurer's contractual obligation to deal fairly and in good faith in the settlement of uninsured motorist claims. *See, e.g., Craft v. Economy Fire and Casualty Co.,* 572 F.2d 565, 568–71 (7th Cir.1978); *Beck,* 701 P.2d at 798–801; *Bibeault v. Hanover Ins. Co.,* 417 A.2d 313, 319 (R.I.1980); *MFA Mut. Ins. Co. v. Flint,* 574 S.W.2d 718, 720–21 (Tenn.1978); *Escalante v. Sentry Ins.,* 49 Wash.App. 375, 743 P.2d 832, 837–38 (1987); *Hendren v. Allstate Ins. Co.,* 100 N.M. 506, 672 P.2d 1137, 1141 (Ct.App.1983); *Richardson v. Employers Liab. Assurance Corp.,* 25 Cal. App.3d 232, 102 Cal.Rptr. 547, 552, 556 (1972). *Contra, Craig v. Iowa Kemper Mut. Ins. Co.,* 565 S.W.2d 716, 721–24 (Mo. Ct.App.1978); *Baxter v. Royal Indem. Co.,* 285 So.2d 652, 656 (Fla.Dist.Ct.App.1973).

■ When the legislature required, in W.Va.Code § 33–6–31, that the insured show the sum which he is "legally entitled to recover" as damages from an uninsured motorist, it did not provide that the insured first had to win judgment against the uninsured motorist to invoke his contractual right to obtain from the insurer conduct characterized by fair dealing and good faith. This is manifest from *Lee.* There

the court explained that the phrase "legally entitled to recover" damages from the uninsured motorist means that the insurance carrier is required to pay "only if the motorist *is or would be* liable to the insured." 373 S.E.3d at 348 (emphasis added). We therefore conclude that neither the West Virginia statute nor West Virginia case law requires the insured to obtain a judgment against the uninsured motorist as a condition precedent to the insurance carrier's contractual duty to deal with its insured fairly and in good faith in settlement negotiations.

In *Beck*, the Supreme Court of Utah defined an insurer's obligation to perform a first party contract for uninsured motorist coverage as follows:

[A]t the very least, ... the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim.... The duty of good faith also requires the insurer to "deal with laymen as laymen and not as experts in the subtleties of law and underwriting" and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract.... These performances are the essence of what the insured has bargained and paid for, and the insurer has the obligation to perform them. When an insurer has breached this duty, it is liable for damages suffered in consequence of that breach.

701 P.2d at 801 (citations omitted). This definition is consistent with West Virginia's concept of an insurer's obligation to perform a first party contract. We do not hold that recovery against the uninsured motorist establishes that the insurer breached the insurance contract by failing to settle. The critical question is whether the insurer acted reasonably in disposing of the insured's claims by taking into consideration all of the elements of the claim—that is, whether the uninsured motorist was negligent, whether the insured was contributorily negligent, and the amount of damages sustained. If the liability of the uninsured motorist is fairly debatable, the insurer is under no duty to settle. It may, under these circumstances, await the outcome of the insured's action against the uninsured motorist without breaching the contract. *Beck*'s definition of an insurer's obligation can serve as a guide for the determination of liability on remand. *Hayseeds*, 352 S.E.2d at 79–80, provides guidelines for the measure of consequential damages and the proof required for punitive damages, if the district court finds that Nationwide breached the contract.

## II

The Weeses also argue that the district court should have considered their claim under West Virginia's Unfair Trade Practices Act, W.Va.Code §§ 33–11–1—33–11–10 (1982). They allege that Nationwide's actions constituted unfair claim settlement practices proscribed by section 33–11–4(9) of the Act.[2]

2. Section 33–11–4(9) provides as follows:

*Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising materi-

■ The Supreme Court of Appeals of West Virginia has held that there is a private right of action for a violation of the Act. *See Mutafis v. Erie Ins. Exch.*, 328 S.E.2d 675, 681 (W.Va.1985); *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252, 254–55 (1981). A cause of action under the Act is independent of any contract duty owed by an insurer. Not only an insured, but a third party who has a claim against an insured, may sue the insurer under the Act. *See Jenkins*, 280 S.E.2d at 255–58. Certainly if the Act provides a cause of action for strangers to the insurance contract, it would also provide an action for the insured under uninsured motorist coverage.

The Weeses have already obtained a judgment against the uninsured motorist, thereby satisfying the requirement that the underlying issues of liability and damages be resolved before the insured can sue under the Act. *See Jenkins*, 280 S.E.2d at 259. A claimant under the Act also must show that the insurer committed the objectionable acts "with such frequency as to indicate a general business practice." W.Va.Code § 33–11–4(9) (1982). Explaining this requirement, the Court stated that "multiple violations ... occurring in the same claim would be sufficient" to constitute a general business practice, "since the term 'frequency' in the statute must relate not only to repetition of the same violation but to the occurrence of different violations." 280 S.E.2d at 260.

■ The Act does not exclude uninsured motorist coverage from its terms, and we are confident that the Supreme Court of West Virginia would apply the Act in accordance with its plain language.

### III

■ We agree with the district court that the Weeses cannot recover against Nationwide in tort. West Virginia courts have not decided whether there is a cause of action in tort for an insurer's breach of its duty of good faith and fair dealing with its insured. *See Arcuri v. Great Am. Ins. Co.*, 342 S.E.2d 177, 181 n. 4 (W.Va.1986); *Speicher v. State Farm Mut. Auto. Ins. Co.*, 151 W.Va. 292, 151 S.E.2d 684, 685 (1966). We have held, however, that West Virginia would adopt the tort of bad faith where the insured was covered by a liability policy and the insurer controlled the insured's defense in litigation. *See Daniels v. Horace Mann Mut. Ins. Co.*, 422 F.2d 87, 89–90 (4th Cir.1970). Liability insurance is third-party coverage, under which the insurer contracts to pay third-party claims against the insured. *Daniels* held that the liability insurer could be held liable for its bad-faith, unreasonable refusal to settle a claim against the insured. 422 F.2d at 88–89. The tort of bad faith, independent of a contract action on the insurance policy, exists because the insurer in the third-party setting owes a fiduciary duty to the insured. *See Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 323 A.2d 495, 504–05 (1974).

This fiduciary duty "rests on the reservation of exclusive right to contest or negoti-

al accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(*l*) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

W.Va.Code § 33–11–4(9) (1982).

ate the claim of liability brought against the insured, and so withhold from the insured the right to settle without consent of the insurer." *Craig,* 565 S.W.2d at 723. Only in a third-party insurance policy do the "terms of agreement repose in the insurer the power to act for the insured, akin to authority a client vests in an attorney, or a principal in an agent—each a relationship of inherent fiduciary obligation." *Craig,* 565 S.W.2d at 723.

Because the tort of bad faith consists of an insurer's breach of its fiduciary duty to its insured, there can be no such tort in the absence of an extra-contractual fiduciary duty. *See Craig,* 565 S.W.2d at 724. Relying on this ground, a number of courts have declined to recognize a cause of action in tort against an uninsured motorist carrier. *See, e.g., Szumigala v. Nationwide Mut. Ins. Co.,* 853 F.2d 274, 280 n. 7 (5th Cir.1988) (applying Mississippi law); *Craig,* 565 S.W.2d at 723–24; *Baxter,* 285 So.2d at 656–57; *Walsh v. Campbell,* 130 Ga.App. 194, 202 S.E.2d 657, 661–62 (1973).

### IV

The facts of the case were not developed in the district court. Consequently, we express no view on the merits of the Weeses' claim. We hold only that West Virginia law affords an insured a cause of action against his insurer for breach of a contract insuring against loss caused by an uninsured motorist and for violation of the Unfair Trade Practices Act. While the insured cannot bring suit until after he has recovered a judgment against the uninsured motorist, he can allege that the contract was breached and the Act violated by acts or omission of the insurer before judgment was entered against the uninsured motorist.

The Weeses seek compensatory and punitive damages, and attorney fees to reimburse them for fees they have incurred. The compensatory damages include a claim for $101,000, the unsatisfied portion of their judgment against the uninsured motorist. They cannot recover this item of damages. The uninsured motorist, not Nationwide, was responsible for this loss. Nothing that Nationwide did, or omitted to do, contributed to the damage the Weeses suffered as a result of the accident.

The judgment of the district court is affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. The Weeses shall recover their costs.