**Edmond L. SHAFER,
Plaintiff–Appellant,**

v.

**AUTOMOBILE CLUB INTER–INSURANCE EXCHANGE,
Defendant–Respondent.**

**No. 16017.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 4, 1989.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 28, 1989.

Application to Transfer Denied Nov. 14, 1989.

John Wooddell, Bruer & Wooddell, P.C., Springfield, for plaintiff-appellant.

Brad J. Fisher, Lee Ann Miller, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-respondent.

HOLSTEIN, Chief Judge.

Plaintiff Edmond L. Shafer filed an amended eight-count petition asserting various claims stemming from an auto accident in 1983. The counts relevant to this appeal are Count II, seeking recovery pursuant to uninsured motorist provisions of an insurance policy issued by defendant Automobile Club Inter–Insurance Exchange (Automobile Club) and prejudgment interest; Count III, asserting a statutory claim for vexatious refusal to pay the uninsured motorist claim; and Count V, alleging a claim for "tortious breach of contract" for delay in paying the uninsured motorist claim.

Pursuant to motions by Automobile Club, the trial court found that Counts III and V failed to state a claim upon which relief could be granted and that "the parties agree that Plaintiff's claims for prejudgment interest may be stricken from Count II." Accordingly, the trial court sustained the motions to dismiss Counts III and V and strike the claim for prejudgment interest on the uninsured motorist coverage claim. Following an entry of judgment disposing of all other claims, Shafer appeals.

On appeal two points are raised. The first is that the trial court erred in dismissing Counts III and V because the facts alleged are sufficient to invoke principles of substantive law entitling plaintiff to recover. The second point asserts the trial court erred in rejecting plaintiff's request for prejudgment interest on the uninsured motorist claim. We affirm in part and reverse in part.

When reviewing the dismissal of a claim for failure to state a cause of action, the pleading is given its broadest intendment,

all facts alleged are treated as true, and allegations are construed favorably to the plaintiff in determining whether the allegations invoke principles of substantive law. *Missouri Mun. League v. Brunner,* 740 S.W.2d 957, 958 (Mo. banc 1987). The facts recited below are extracted from Shafer's amended petition.

On September 17, 1983, Shafer was riding in a vehicle being driven by Mark Pruett in a northerly direction on Highway 160 in Christian County, Missouri. Ronald L. Munsey was operating a vehicle in the opposite direction. The Pruett and Munsey vehicles collided. The collision was a result of negligence by both Pruett and Munsey.[1] At the time of the collision, Automobile Club had issued an insurance policy to Pruett which provided uninsured motorist coverage for persons occupying Pruett's vehicle. Under that coverage Automobile Club agreed to pay all sums up to a $25,000 limit which any insured might be "legally entitled to recover" from the owner or operator of an uninsured motor vehicle. Under the terms of the policy, Shafer was an insured. Munsey's vehicle was uninsured. Shafer claimed substantial injuries and damages in the sum of $5,000,000. Shafer submitted records of medical expenses in excess of $63,000 to Automobile Club.

Shafer's attorney contacted Automobile Club's claims adjuster with respect to his claim in January 1984 and by February 7, 1984, had furnished the adjuster with proof of losses and made a demand for payment due under the uninsured motorist coverage of the insurance contract. On February 15, 1984, Automobile Club's claims adjuster acknowledged its obligation to pay the uninsured motorist coverage. The adjuster indicated he was turning the matter over to Automobile Club's attorney who would draft the documents to accomplish the settlement. On May 14 Shafer's attorney contacted Automobile Club's attorney by letter. No reply was received. On October 3,

1984, Shafer's attorney notified Automobile Club's attorney that because of the silence, he assumed Automobile Club had decided not to pay the claim, and if that assumption was incorrect to contact him. Automobile Club's attorney did not reply.

On November 27, 1984, Shafer filed his suit against Pruett and Munsey and again offered to accept the $25,000 limits of the uninsured motorist coverage. The attorney for Automobile Club again did not reply. The first offer to settle occurred February 13, 1985, in which Automobile Club offered $25,000 to settle the claim.

Shafer asserted in Count III that the refusal to pay was vexatious and without reasonable cause or excuse. In support of Count V, the claim for tortious breach of contract, Shafer alleged that Automobile Club had unreasonably delayed settlement and was negligent in performing its obligations under the contract of insurance.

■ The first part of plaintiff's first point on appeal is that the facts alleged in Count III, if true, entitle plaintiff to damages for vexatious refusal to pay the claim. Section 375.420[2] provides:

In any action against any insurance company to recover the amount of any loss under a policy of *automobile,* fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance *except automobile liability insurance,* if it appears from the evidence that such company has *refused to pay such loss without reasonable cause or excuse,* the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed *twenty percent of the first fifteen hundred dollars of the loss, and* ten percent of the amount of the loss *in excess of fifteen hundred dollars* and a reasonable attorney's fee; and the court shall enter judgment for the aggregate

---

1. Although not a part of the pleadings, the record before us reflects that a separate trial was held on the issues of the negligence of Pruett and Munsey in which 80% of fault was attributed to Munsey and 20% to Pruett. Total damages were assessed at $850,000.

2. References to statutes are to RSMo 1986.

sum found in the verdict.[3]

A preliminary question not addressed in the briefs of the parties is whether "automobile liability insurance" includes the uninsured motorist provisions. Among those provisions required in an automobile liability insurance policy is uninsured motorist coverage. § 379.203. The underlying public policy of the statute requiring uninsured motorist provisions as part of a liability insurance policy is to give insureds protection when injured by an uninsured motorist. *Otto v. Farmers Ins. Co.*, 558 S.W.2d 713, 717 (Mo.App.1977). Liability insurance is generally that type of insurance protection which indemnifies one from liability to third persons as contrasted with insurance coverage for losses sustained by an insured. Black's Law Dictionary 824 (5th ed. 1979). Uninsured motorist coverage has been likened to accident insurance restricted to a limited class of accident, as distinguished from liability insurance. *State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig*, 364 S.W.2d 343, 346–47 (Mo. App.1963). Taking into consideration the general definition of liability insurance, and that uninsured motorist coverage is designed to protect injured insureds, it becomes apparent that uninsured motorist coverage is not automobile liability insurance. Thus the coverage does not fall within the "automobile liability insurance" exception to § 375.420. It is true that the statute is penal in nature and must be strictly construed. However, that rule of construction should not be used to create exceptions not found in the plain language of the statute.

The briefs of the parties and our research disclose only one Missouri case specifically addressing the circumstances under which the penalties provided for in § 375.420 may be assessed on claims based on uninsured motorist coverage of an insurance policy, *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716 (Mo.App. 1978).[4] The Western District of the Missouri Court of Appeals held that the vexatious penalty provisions are not applicable to uninsured motorist claims until after the liability of the uninsured tort-feasor is adjudicated. The court stated:

> The obligation of insurer ... to the [insured] ... did not accrue merely because [the insured] proved a loss but only after the damage was adjudicated to result from the legal liability of the uninsured motorist.... [T]he claim of the [insured] did not become *a loss under the policy* ... until the legal cause for the injury first was fixed on the uninsured motorist. Only then did the claim become *a loss under the policy,* and so, *ex contractu* ... when final judgment was entered on the verdict ... against [the uninsured motorist].

*Id.* at 720–21. (Emphasis in original). The court did not rely on any statutory language or on any authoritative case law in reaching the above conclusion. The case also seemed to rely on a legal fiction that the contractual relationship of the insurer and insured is modified, or transformed, because the uninsured motorist coverage places them in an adversary position. *Id.* at 721. Only after an adjudication against the uninsured motorist was the relationship of insurer and insured restored. *Id.* at 722. Of course, the insurer and insured are in an adversary relationship whenever there is any claim by an insured for loss under any insurance policy.

*Craig* is no longer controlling authority. In cases decided prior to *Craig*, an unsatisfied judgment against an uninsured motorist was found not to be a prerequisite to bringing a contract action on the policy. *Hill v. Seaboard Fire & Marine Ins. Co.*,

---

**3.** The emphasized words represent modified language of the statute which became effective in 1975.

**4.** The cases from other states addressing the question presented here are not in agreement. For a case holding that an insuror has no duty which will subject it to a statutory penalty prior to judgment being entered against the uninsured motorist, see *Allstate Ins. Co. v. McCall,* 166

Ga.App. 833, 305 S.E.2d 413, 414 (1983), *aff'd,* 251 Ga. 869, 310 S.E.2d 513 (1984). For cases holding the insuror may be subject to statutory penalties without an adjudication against the uninsured motorist, see *McDill v. Utica Mut. Ins. Co.,* 475 So.2d 1085, 1091–92 (La.1985), and *Farm Bureau Mut. Ins. Co. of Ark. v. Mitchell,* 249 Ark. 127, 458 S.W.2d 395, 396 (1970).

374 S.W.2d 606, 611 (Mo.App.1963); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig, supra,* at 347. These cases are not mentioned by the *Craig* court, although they are impossible to harmonize with its rationale. Defendant's brief argues that *Hill* was reversed by *Craig.* If that is true, it is also true that *Hill* was followed subsequent to *Craig. Edwards v. State Farm Ins. Co.,* 574 S.W.2d 505, 506 (Mo. App.1978).

Subsequent to the decision in *Craig,* the Supreme Court of Missouri, relying on *Hill,* clearly articulated the nature and elements of a claim for uninsured motorist coverage. *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713 (Mo. banc 1979); *Cobb v. State Sec. Ins. Co.,* 576 S.W.2d 726 (Mo. banc 1979). An uninsured motorist coverage claim is a separate and distinct cause of action from the tort claim against the uninsured motorist, and the insured is not required to assert any claim against the uninsured motorist as a condition precedent to recovery under the insurance contract. *Oates v. Safeco Ins. Co. of America, supra,* at 717. The right to recover under the uninsured motorist coverage is on the contract and not in tort. *Cobb v. State Sec. Ins. Co., supra,* at 736. To be legally entitled to recover, the insured must show (1) that the other motorist was uninsured, (2) that the other motorist is legally liable to the insured, and (3) the amount of damages. *Oates v. Safeco Ins. Co. of America, supra,* at 715. It follows that if an insured is "legally entitled to recover," he has suffered a "loss under the policy."

Because the rule enunciated in *Craig* was dependent upon that court's conclusion that an adjudication was a precondition to the insured's having suffered "a loss under the policy," it is in conflict with the more recent and authoritative holdings of the Missouri Supreme Court. To the extent of the discord, *Craig* will not be followed.

We hold that an insured under a policy containing an uninsured motorist clause who brings an action against the insurer to enforce his claim, and who establishes by evidence that the insurer has refused to pay such loss without reasonable cause or excuse, is entitled to the penalties provided for under § 375.420. The right to seek the penalties exists even though the insured never obtains an adjudication against the uninsured motorist.

■ Remaining for determination is whether or not the facts alleged in the plaintiff's petition are sufficient to state a cause of action under the vexatious penalty statute.

To support the imposition of the penalty under the statute, plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person.

The existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. Direct and specific evidence to show vexatious refusal is not required....

*DeWitt v. American Family Mut. Ins. Co.,* 667 S.W.2d 700, 710 (Mo. banc 1984) (citations omitted).

■ Automobile Club argues that Shafer's refusal to accept the tender of the policy limits on February 13, 1985, foreclosed any claim for vexatious penalties. In support of that they again cite *Craig.* In *Craig* the plaintiff obtained a judgment against the uninsured motorist and there was a lapse of some 33 days after that judgment before the insurance company tendered full payment. Evidence at trial indicated that during the 33-day period the parties were "in the throes of a legal quandary—whether the uninsured motorist coverage on the multiple vehicles could be stacked." The court held that the judgment of the circuit court denying recovery of the penalties "rests on the logic of the circumstances and the exercise of that discretion will not be disturbed." *Craig v. Iowa Kemper Mut. Ins. Co., supra,* at 722. The court did not say that the pleadings were insufficient to establish a cause of action. Treating the facts alleged in the pleadings as true, and construing the allegations favorably to plaintiff, the pleadings

are sufficient to state a cause of action under § 375.420.

■ The second part under plaintiff's first point asserts plaintiff has stated a cause of action for a "tort-based remedy" for breach of contract, as alleged in Count V. Shafer cites cases in which public utilities or common carriers have been held liable in tort for failure to perform certain duties which serve the public interest. *National Food Stores, Inc. v. Union Elec. Co.,* 494 S.W.2d 379 (Mo.App.1973); *Nagel v. Thompson,* 237 Mo.App. 1061, 170 S.W.2d 416 (1943). Shafer then refers us to cases in which our courts have stated that insurance companies are regulated because they are affected with a public interest. *State ex rel. Missouri State Life Ins. Co. v. Hall,* 330 Mo. 1107, 52 S.W.2d 174 (1932); *McWilliams v. Central States Life Ins. Co.,* 137 S.W.2d 641 (Mo.App.1940). Finally, Shafer cites 2A Couch on Insurance 2d, § 23.11 (rev. ed. 1984), which states, "Insurance policies are contracts of the utmost good faith and must be administered and performed as such by the insurer." Shafer argues that because insurance companies are "affected with a public interest" and are charged with a duty of "utmost good faith" in dealing with insureds, there is, or should be, a tort cause of action for an intentional or negligent breach of that duty.

Essentially the same argument has been made before and rejected. In response to such argument, the court in *Duncan v. Andrew County Mut. Ins. Co.,* 665 S.W.2d 13, 19–20 (Mo.App.1983), said:

> Section 375.420, RSMo 1978, enacted by the General Assembly of this state is the linchpin for subscribing to the theory of preemption as it provides a statutory procedural remedy in favor of insureds for redress of abuses by insurers in disposing of first party claims under policies of property and related insurance. It is a clear expression of public policy on the subject vitiating any need for extending the tort of bad faith to first party claims. To hold otherwise, would, for all practical purposes, constitute a repeal of § 375.420, supra, by judicial fiat due to

the broader vista of damages envisioned under the tort of bad faith.

In addition, § 375.420 preempts a tort action for negligence in denying a claim on an insurance policy. *Halford v. American Preferred Ins.,* 698 S.W.2d 40, 43 (Mo.App. 1985). In this case, plaintiff's attempt in Count V to state a cause of action in tort is preempted by the remedy granted under the statute. The trial court committed no error in dismissing that count.

■ Plaintiff's second point is that the trial court should not have stricken his claim in Count II for prejudgment interest. The court's order striking the claim for prejudgment interest was based on an agreement between the parties. Because the order was entered pursuant to an agreement of the parties, it is not a judicial determination of rights and cannot be appealed. *State ex rel. Fletcher v. New Amsterdam Casualty Co.,* 430 S.W.2d 642, 645 (Mo.App.1968).

That portion of the judgment dismissing Count III of the petition is reversed, and the cause is remanded to the trial court for further proceedings on Count III consistent with this opinion. In all other respects, the judgment is affirmed.

CROW, P.J., and GREENE, J., concur.