**Donald STEFL, et al., Plaintiffs,**

v.

**Jerry Allen GUYETTE and Farmers Insurance Company, Inc., Defendants,**

**and**

**ATLANTA CASUALTY COMPANY, Interpleader Plaintiff,**

v.

**Donald STEFL, Gale Stefl, Edward S. Metts, Scott Haas, and St. Anthony's Medical Center, Interpleader Defendants.**

No. 4:93 CV 977 DDN.

United States District Court, E.D. Missouri, Eastern Division.

May 16, 1995.

Gerald M. Dunne, St. Louis, MO, for Donald Stefl, Gale Stefl.

Steven J. Hughes, Daniel T. Rabbitt, Jr., Rabbitt and Pitzer, St. Louis, MO, Joseph P. Whyte, Schwartz and Ochs, St. Louis, MO, for Jerry Allen Guyette, Atlanta Cas. Co.

John G. Doyen, Brinker and Doyen, St. Louis, MO, for Farmers Ins. Co., Inc.

Theodore H. Hoffman, President, Hoffman and Wallach, St. Louis, MO, for Edward S. Metts.

Jack C. Harper, Victor C. Strauss, Jr., St. Louis, MO, for Scott Haas.

Timothy Marshall Walters, St. Louis, MO, for St. Anthony's Medical Center.

## MEMORANDUM

NOCE, United States Magistrate Judge.

This action is before the court upon various motions of the parties and for judgment following the presentation of evidence to the court sitting without a jury. The parties have consented to the exercise of authority by a United States Magistrate Judge under 28 U.S.C. § 636(c)(3). Hearings were held on October 31 and December 27, 1994.

Plaintiffs Donald Stefl and Gale Stefl commenced this action in the Circuit Court of the City of St. Louis against defendants Jerry Allen Guyette and Farmers Insurance Company, Inc. (Farmers), for damages resulting from the motor vehicle collision death of their daughter, Shauna Stefl, on December 29, 1992. Also injured in the collision were Edward S. Metts and Scott Haas, passengers in the automobile driven by Shauna. Defendant Farmers removed the action to this court under the subject matter jurisdiction granted by 28 U.S.C. § 1332.

Plaintiffs allege in Counts 1 and 2 of their second amended complaint that defendant Guyette drove his vehicle on the wrong side of the road while under the influence of alcohol, thereby causing the collision and the death of Shauna. Plaintiffs seek $500,000.00 in compensatory damages and $500,000.00 in punitive damages from defendant Guyette.

In Count 3, plaintiffs allege that they have tendered the entire available liability insur-

ance limits ($50,000.00) of a policy issued by Atlanta Casualty Company to defendant Guyette, to share with Metts and Haas. Therefore, plaintiffs seek payment of the proceeds of three other insurance policies issued by Farmers to plaintiffs, No. 14–11482–3132, No. 14–2687–89–39, and No. 14–10398–13–99. Plaintiffs further allege that the policies had an underinsured motorist protection endorsement in the total amount of $130,000.00, and that Farmers has withheld payment of this amount without just cause or excuse, entitling plaintiffs to recover the Missouri statutory penalty for vexatious failure to pay the proceeds.

On February 25, 1994, Atlanta Casualty Company filed its interpleader complaint in this action and deposited the $50,000.00 insurance proceeds in the registry of the court. In response to the interpleader, counterclaims have been filed by Scott Haas for an amount in excess of $50,000.00, and by Edward S. Metts in the sum of $18,500.00. St. Anthony's Medical Center has filed claims for compensation on its statutory liens for providing medical services to Haas and Metts.

Thereafter, Farmers filed its claim for declaratory judgment and interpleader, alleging that its policy No. 14–010398–13–99 was cancelled on December 9, 1992, prior to the subject motor vehicle collision. Farmers alleges that the coverage provided by policy No. 14–011482–31–32 is $50,000 per person and $100,000.00 aggregate; and by policy No. 14–002687–89–39 is $30,000 per person and $60,000.00 in the aggregate. Farmers seeks a declaration by the court that a certain provision in both policies prohibits the "stacking" of the underinsured motorist coverage and limits its liability to $50,000 per person and $100,000 in the aggregate.

## FINDINGS OF FACT

From the evidence adduced during the non-jury presentation of evidence on October 31, 1994, the court makes the following findings of fact:

1. Plaintiffs Donald Stefl and his wife, Linda Gale Stefl, reside in Cedar Hill, Missouri. On February 11, 1975, the Stefls adopted Shauna when she was three days old. Shauna, the Stefls' only child, grew up a healthy girl. She graduated from parochial grade school and entered John F. Kennedy High School. She received grades of Cs and Bs. She enjoyed life. She was active in sports and the school glee club. She was on the editorial board of the school year book. Shauna also worked babysitting, at a local department store, and as a nursing home receptionist. She helped with the chores around the house. After Donald Stefl became totally disabled in approximately 1989, Shauna helped him with everything around the home. She paid for her own clothing and automobile insurance. Shauna planned to continue with her education, possibly leading to a nursing career, and to marry Edward Metts.

2. Shortly after midnight on December 29, 1992, Shauna was fatally injured, at age 17, in a motor vehicle collision on Highway 30 in Jefferson County, Missouri. She was driving an automobile, with Scott Haas and Edward Metts as passengers, which collided head on with a pick-up truck driven by defendant Jerry Allen Guyette. Guyette drove his vehicle on the wrong side of the road while under the influence of alcohol, thereby causing the collision, the death of Shauna, and substantial injuries to Haas and Metts.

3. On September 24, 1993, in the Circuit Court of Jefferson County, Missouri, Jerry Allen Guyette pled guilty to involuntary manslaughter for Shauna's death, assault against Edward Metts, and assault against Scott Haas, for his actions which caused the vehicle collision of December 29, 1992. On November 23, 1993, Guyette was sentenced to consecutive terms of imprisonment of seven years, two years and two years, for a total sentence of eleven years of imprisonment. *See* Pl.Hearing Exh. 6.

4. As a result of the collision, Donald Stefl and Linda Gale Stefl have suffered and are entitled to recover the following damages against defendant Jerry Allen Guyette:

(a) $7,500 for funeral expenses;

(b) $2,500 for the cemetery lot and headstone; .

(c) $200 for the ambulance service;

(d) $4,000 for the total loss of the automobile driven by Shauna;

(e) $500,000 for the loss of the services and support of their daughter, Shauna Stefl; and

(f) $100,000 in punitive damages.

5. As a result of the collision, Edward Metts has suffered and is entitled to recover the following damages against defendant Jerry Allen Guyette:

(a) $7,889.06 for reasonable and necessary medical expenses for medical services provided by St. Anthony's Medical Center;

(b) $50,000 for pain and suffering; and

(c) $100,000 in punitive damages.

6. As a result of the collision, Scott Haas has suffered and is entitled to recover the following damages against defendant Jerry Allen Guyette:

(a) $17,822.91 for reasonable and necessary medical expenses provided by St. Anthony's Medical Center;

(b) $50,000 for pain and suffering; and

(c) $100,000 in punitive damages.

7. As a result of the collision, St. Anthony's Medical Center provided Scott Haas with necessary medical attention and treatment at the reasonable cost of $17,822.91, and it provided Edward Metts with necessary medical attention and treatment at the reasonable cost of $7,889.06.

8. Following the commencement of this action, the Stefls, Metts, and Haas settled their claims to insurance proceeds as follows: 40 per cent to the Stefls, 30 per cent to Metts, and 30 per cent to Haas. Based upon the record before the court, this settlement division of the insurance proceeds is reasonable and was reached in good faith.

## DISCUSSION

In response to the motions for summary judgment filed by the plaintiffs and by Farmers in this action, District Judge Charles A. Shaw found to be undisputed the fact that the policies at issue issued by Farmers each included endorsement No. E1179 which provides:

Coverage C–1 UNDERinsured Motorist Coverage.

For an additional premium it is agreed that UNDERinsured Motorist Coverage C–1 is added to Part II of your policy. We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by the insured person.

Limits of Liability.

a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of the UNDERinsured Motorist Coverage stated in this policy, and our maximum liability under the UNDERinsured Motorist Coverage is the amount of the damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle.

\* \* \* \* \* \*

c. The limit for "each person" is the maximum for bodily injury sustained by any person in any one occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit.

d. Subject to the limit for "each person," the limit for "each occurrence" is the maximum combined amount for bodily injury sustained by two or more persons in any one occurrence.

e. We will pay no more than the limit stated in the policy regardless of the number of named insureds, insured vehicles in the household, insured persons, or underinsured vehicles involved in the occurrence.

\* \* \* \* \* \*

Other insurance.

1. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

\* \* \* \* \* \*

4. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total

amount payable among all such policies shall not exceed the limits provided for the single vehicle with the highest limits of liability.

*See* Memorandum and Order, filed October 6, 1994, pp. 6–7; motion Exh. C, filed June 1, 1994.

Plaintiffs argued that the "anti-stacking" provision of the policy, Other insurance ¶ 4, above, is vague, confusing, and duplicitous, and ought not to be enforced. Judge Shaw concluded, contrary to plaintiffs' position, that this provision was not ambiguous. The court also ruled that, although plaintiffs may have paid separate premiums for the under-insured motorist coverage in more than one policy, that fact alone does not mean that Farmers did not intend to limit its liability to the coverage provided by one policy. *Id.* at 8–9. Plaintiffs having failed to establish their entitlement to summary judgment, their motion was denied.

The court concluded further that Farmers was entitled to summary judgment on its argument that its policy No. 14–010398–13–99 was not in effect on the day of the accident. *Id.* at 12–13.

Farmers further argued on its motion for summary judgment that it was entitled to a judicial declaration that the "anti-stacking" language of its policies is valid and enforceable. Farmers argued that under its endorsement E1179, the uninsured and underinsured motorist coverages of the policies were treated separately and prohibited stacking. The court, however, determined that the evidentiary record was not unequivocal as to whether the policies adequately treated the uninsured and underinsured motorist coverages separately on the date of the accident and as to whether a relevant July 1993 version of policy endorsement E1105 was the same as that which had been attached to Farmers' pre-accident renewal statements. Therefore, the court denied the motion of Farmers for a declaratory judgment that the anti-stacking provision in its policies was valid and enforceable. *Id.* at 13–15.

By its second motion for summary judgment, filed November 14, 1994, Farmers shows the court that its endorsement E1105 was in effect in and after August 1990, prior to the collision which took Shauna's life. This endorsement provides:

It is agreed that under Part II—Uninsured Motorist, the following changes apply:

1. The words "(Including Underinsured Motorist Coverage)," if shown in the title "Coverage C", are deleted from the title "Coverage C", (Does not apply to E–Z Reader Motorcycle Policy).

2. Item 3(b) of "Additional Definitions Used in This Part Only" is deleted.

*See* Motion Exhibit D, filed November 14, 1994. This was the contractual language of the policy which Judge Shaw determined was necessary to separate the underinsured motorist and the uninsured motorist coverages in the policies, so that effect could be given to the anti-stacking provisions. *See* Memorandum and Order, filed October 6, 1994, pp. 14–15. The record shows that, prior to the date of the accident, endorsements E1179 and E1105 were in effect in policy Nos. 14–11482–31–32 and 14–2687–89–39.

█ In this case, the anti-stacking provision of the two policies at issue must be given effect. Missouri law does not require that insurance companies provide underinsured motorist coverage. *Tegtmeyer v. Snellen,* 791 S.W.2d 737 (Mo.Ct.App.1990). Unambiguous policy language which restricts or limits coverage will be enforced as it is written, unless there is a statute or a public policy which requires that the coverage be provided. *Rodriguez v. General Accident Insurance Company of America,* 808 S.W.2d 379, 382 (Mo.1991) (en banc); *Hopkins v. American Economy Insurance Co.,* 896 S.W.2d 933, 937–939 (Mo.Ct.App.1995). Therefore, the liability of Farmers in this action is limited to underinsured motorist coverage of $100,000 for the whole occurrence.

█ Further, Farmers argues that the language of "Limits of Liability" ¶ a, endorsement E1179 quoted above at pp. 6–7, allows Farmers to receive credit for the $50,-000 received from Guyette and his insurer, Atlanta Casualty Company, under policy No. 02717344. Thus, Farmers seeks a judgment that its liability is limited to $50,000. The

court disagrees with this argument. The relevant language of the policy requires Farmers to pay "the amount of the damages sustained" and to receive a credit for the amount "recovered from the insurance policy of the driver or owner of any underinsured at-fault vehicle." The interpretation argued by Farmers would substitute "policy limits" for "damages sustained." Such an interpretation gainsays the clear and unequivocal language used. *See American Family Insurance Co. v. Turner,* 824 S.W.2d 19, 21 (Mo.Ct.App.1991) (policy provision that reduced "damages an insured person is legally entitled to recover" interpreted as reducing the amount of damages suffered); *cf. Hopkins v. American Economy Insurance Co.,* 896 S.W.2d 933, 936–37 (Mo.Ct.App.1995) (policy provision that reduced "amounts otherwise payable for damages under this coverage" interpreted as reducing policy limits).

■ St. Anthony's Medical Center, by its cross-claims and counterclaims, seeks to recover on its liens from the insurance proceeds (under the policies issued by both Atlanta Casualty Company and Farmers Insurance Company) to be awarded to Scott Haas and Edward Metts its costs of providing medical treatment and services to them. Invoking Missouri Revised Statutes §§ 430.235, 430.240, 430.250, and 408.020 (1994), St. Anthony's seeks the sum of $17,822.91, plus interest at the statutory rate of 9 per cent per annum from January 5, 1993,[1] for the services it provided to Haas, and the sum of $7,889.06, plus interest at the rate of 9 per cent per annum from January 11, 1993, for the services it provided to Metts.

Section 430.235 provides in relevant part:

[E]very ... hospital ... shall have a lien upon any and all claims, counterclaims, demands, suits, or rights of action of any person admitted to any hospital ... and receiving treatment, care or maintenance therein for any cause including any personal injury sustained by such person as the result of the negligence or wrongful act of another, which such injured person may

have, assert or maintain against the person or persons causing such injury for damages on account of such injury, for the cost of such services computed at reasonable rates the customary charges for the services and the customary charges for necessary X-ray, laboratory, operating room and medication services as such hospital ... shall render such injured person on account of his conditions.

Defendants Metts and Haas argue that, under the Missouri statute, St. Anthony's liens attach only to the $50,000 interpleaded by Atlanta Casualty Company on behalf of defendant Guyette and not at all to any of the amounts payable by Farmers. The operative statutory language provides that the hospital shall have a lien for its services "upon any and all claims ... which such injured person may have ... against the person ... causing such injury...." By the clear language of this statute, the lien asserted by St. Anthony's applies to all of the claims Metts and Haas may have against Guyette, who caused the injuries. *Frankum v. Hensley,* 884 S.W.2d 688, 691 (Mo.Ct.App. 1994); *American Family Mutual Insurance Company v. Ward,* 774 S.W.2d 135 (Mo.1989) (en banc).

St. Anthony's liens extend to all of the moneys payable to Metts and Haas in satisfaction of their judgments against Guyette. *Cf. Frankum v. Hensley,* 884 S.W.2d at 689, 691. These moneys are the proceeds of the policies issued by both Atlanta Casualty Company and by Farmers Insurance Company, Inc. Therefore, St. Anthony's liens may be asserted not only against the $50,000 deposited with the court by Atlanta but also against the $100,000 payable by Farmers.

Next, Metts and Haas argue that St. Anthony's liens are limited to one-half the insurance proceeds after the attorneys' fees are paid[2] from that half, pursuant to Missouri Revised Statutes § 430.250 (1994). That statute provides in pertinent part:

---

1. *See* Mo.Rev.Stat. § 408.020 (1994).

2. St. Anthony's does not dispute that its liens are payable from proceeds remaining after the attor-

neys' liens are paid. *See* Mo.Rev.Stat. § 484.140 (1994).

Any person ... including an insurance carrier, making any payment to such patient ... as compensation for the injury sustained, after the receipt of such notice in accordance with the requirements of section 430.240, without paying to such hospital the amount of its lien or so much thereof as can be satisfied out of fifty percent of the moneys due to such patient under any final judgment or compromise or settlement agreement after paying the amount of attorneys' liens ... shall have a period of one year, after such settlement is made known to the hospital, from the date of payment to such patient ... be and remain liable to such hospital for the amount which such hospital was entitled to receive, as aforesaid, and any [entity] maintaining such hospital may, within such period, enforce its lien by suit at law against such [insurer] making any such payment.

The court does not need to resolve this argument, because there appear to be sufficient funds to satisfy St. Anthony's liens from half of the proceeds owed to Haas and Metts after the payment of the attorneys' fees.

Metts argues that the evidentiary showing made by St. Anthony's in support of its motion for summary judgment did not satisfy the statutory requirement that the medical services rendered must be "computed at *reasonable rates* not to exceed the *customary charges* for the services and the customary charges for necessary X-ray, laboratory, operating room and medication services as such hospital ... shall render such injured person *on account of his conditions.*" Mo.Rev.Stat. § 430.235 (1994) (emphasis added).

■ St. Anthony's argues that it complied with the requirements of § 490.525 RSMo. (1994) and that Haas and Metts have not rebutted its case as required by § 490.525(5) and (6). These state statutes prescribe the

nature of the evidentiary showing necessary in Missouri courts to prosecute a motion for summary judgment and to defend against one. These procedural provisions are not applicable to judicial actions litigated in this federal court. *See* Mo.Rev.Stat. § 490.525(1) (1994). Rather, this court looks to the sufficiency of the parties' showing under Rule 56, Federal Rules of Civil Procedure.

The court agrees with St. Anthony's that the record of this action adequately supports its position that there is no issue of fact among the parties over whether the medical treatment and services it rendered to Metts and Haas were rendered on account of the conditions resulting from the collision of December 29, 1992. Similarly, the record is sufficient to support a finding in St. Anthony's favor that the charges to Haas and Metts were customary and were billed at reasonable rates for the services provided. Haas filed a pretrial memorandum which admitted the reasonableness of the charges. Only Metts continues to contest the reasonableness of the charges for the services provided to him. However, he has failed to create an issue of fact any an evidentiary showing, by affidavit or otherwise. *See* Affidavits of Sandra Barklage, filed May 27, 1994.[3] *See also* Haas Compliance with Pretrial Order, filed May 16, 1994; Haas Memorandum of Law, p. 1, filed November 14, 1994; Metts Pretrial Memorandum, filed May 5, 1994. *Cf. Frankum v. Hensley,* 884 S.W.2d 688, 690 (Mo.Ct.App.1994) (case remanded so hospital could cure failure to offer proof that the medical treatment and services were necessary to care for the injuries received in accident). St. Anthony's is entitled to recover on its liens against both Metts and Haas.

Further, St. Anthony's is entitled to its prejudgment interest under Mo.Rev.Stat. § 408.020 (1994).

---

**3.** Barklage's affidavits state that she is the Director of Patient Accounts of St. Anthony's Medical Center and that she is personally familiar with matters set out in the state court action St. Anthony's has brought against Scott Haas and with the matters at issue in this action. Further, she states:

The services reflected [in the itemized statement of services and charges attached to the

affidavit] were necessary and the amount charged for these services was reasonable at the time and place that the service was provided.

Her opinion on the reasonableness of the charges is admissible. Fed.R.Evid. 702; *cf. In re Estate of Thomas,* 729 S.W.2d 42, 43 (Mo.Ct.App.1987).

In conclusion, plaintiffs Donald Stefl and Gale Stefl, and claimants Edward S. Metts and Scott Haas, are entitled to judgment against defendant Jerry Allen Guyette as set forth above, and said claimants shall share in the insurance proceeds as agreed to among themselves, after the liens of St. Anthony's Medical Center are satisfied; Farmers Insurance Company, Inc., is entitled to a limitation of its liability to $100,000, for its underinsured motorist coverage, without stacking a second such policy coverage; and the liens of St. Anthony's Medical Center against Metts and Haas may be satisfied from the $50,000 paid into the court's registry by Atlanta Casualty Company and from the $100,000 to be paid by Farmers, after the attorneys' fees and expenses are paid.

Further proceedings are necessary to account for the various amounts of prejudgment interest which has been earned by the amounts paid into the registry of the court and the fees to be paid from the various moneys. An appropriate order is issued herewith.