

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| TRUMAN MEDICAL CENTER, ) | |
| INC. d/b/a TRUMAN MEDICAL ) | |
| CENTERS, ) | |
| Appellant, ) | |
| ) | |
| v. ) | WD82762 |
| ) | |
| PROGRESSIVE CASUALTY ) | FILED: February 25, 2020 |
| INSURANCE COMPANY, ) | |
| Respondent. ) | |

**Appeal from the Circuit Court of Jackson County**
**The Honorable John M. Torrence, Judge**

**Before Division Three: Lisa White Hardwick, P.J., and**
**Alok Ahuja and Mark D. Pfeiffer, JJ.**

Truman Medical Center, Inc., provided treatment to Ozell Lincoln after he was injured in an automobile accident caused by an unidentified motorist. Truman sent notice of a hospital lien to Progressive Casualty Insurance Company, Lincoln's insurer. After receiving Truman's lien notice, Progressive paid Lincoln $300,000 in uninsured motorist benefits to compensate him for his injuries. Progressive made no payment to Truman on its claimed lien.

Truman filed a petition in the Circuit Court of Jackson County against Progressive, claiming that its hospital lien attached to the uninsured motorist benefits that Progressive had paid to Lincoln. The circuit court granted Progressive's motion for summary judgment, finding that Truman's lien did not reach the uninsured motorist benefits. Truman appeals. We affirm.

## Factual Background

Lincoln was injured and sought medical treatment at Truman as a result of a motor vehicle accident which occurred shortly after noon on September 1, 2017. The accident occurred when a vehicle driven by an unidentified motorist crossed the center line on 23rd Street Trafficway near Interstate 435 in Kansas City, and struck head-on the truck which Lincoln was driving. A witness reported to police that the driver and a passenger in the vehicle which struck Lincoln's truck ran away from the accident scene on foot. The driver was never identified.

Progressive had issued a Commercial Auto insurance policy to Say Yes, Inc., which was in force at the time of the accident. Lincoln was identified as the sole "rated driver" on the policy. The policy listed the 2005 Chevrolet Silverado which Lincoln was driving as the only covered automobile. The policy provided a "combined single limit" of $300,000 in uninsured motorist coverage.

On October 30, 2017, Truman sent Progressive notice of a hospital lien. In the notice, Truman asserted that its lien attached to all of Lincoln's claims for damages from a tortfeasor, or for benefits from an insurance carrier, on account of his injuries.

Following the accident, Lincoln made a claim for uninsured motorist coverage under Progressive's policy. Lincoln settled his claim with Progressive for $300,000, the liability limit for the uninsured motorist coverage. No portion of the settlement was paid to Truman for the medical services it had rendered to Lincoln, despite the notice of lien which Truman had served on Progressive.

Truman filed suit against Progressive in the Circuit Court of Jackson County on April 23, 2018. In its First Amended Petition, Truman alleged that it had provided health care services to Lincoln relating to the accident, for which the reasonable and customary charges totaled $176,549.87. The petition alleged that none of the charges for Lincoln's medical treatment had been paid, and that

2

Truman was entitled to a hospital lien in the amount of the unpaid charges pursuant to § 430.235.[1]  Because Progressive had disbursed insurance benefits to Lincoln after receiving notice of Truman's lien, the petition alleged that Progressive was liable to Truman for the entirety of Lincoln's unpaid medical bills.

The parties filed cross-motions for summary judgment.  The circuit court granted Progressive's motion, and denied Truman's.  The court found that Truman's hospital lien did not extend to the uninsured motorist benefits under the Progressive policy because "Progressive [was] neither the person or persons who caused [Lincoln]'s injury nor has either party alleged facts that Defendant Progressive insured the person or persons causing [Lincoln]'s injury."

Truman appeals.

## Standard of Review

"This Court reviews a grant of summary judgment *de novo*."  *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 842 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted).  "Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Folsom v. Mo. State Hwy. Patrol*, 580 S.W.3d 645, 649 (Mo. App. W.D. 2019) (citations and internal quotation marks omitted).  "The Court reviews the record in the light most favorable to the party against whom judgment was entered, and gives the non-movant the benefit of all reasonable inferences from the record."  *Messina*, 585 S.W.3d at 842 (citation and internal quotation marks omitted).

---

[1] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2018 Cumulative Supplement.

3

## Analysis

### I.

In its first Point on appeal, Truman argues that the circuit court erred in granting summary judgment because the material facts were disputed. In its second Point, Truman contends that the circuit court's summary judgment ruling erroneously resolved disputed factual issues, and relied on facts not alleged in Progressive's summary judgment motion. We reject these procedural arguments.

Progressive's motion for summary judgment alleged the following uncontroverted facts: that Lincoln was "allegedly injured" and "allegedly sought medical treatment" at Truman as a result of an accident with an unidentified motorist; that Lincoln was insured under a Progressive insurance policy which provided $300,000 in uninsured motorist coverage at the time of the accident; that Lincoln made a claim for uninsured motorist benefits under the Progressive policy, and ultimately settled that claim with Progressive; and that Truman was asserting a hospital lien claim "due to Progressive's failure to pay [Truman] pursuant to its lien when it settled Ozell Lincoln's [uninsured motorist] claim made under his insurance policy."

Although Truman purported to dispute each of Progressive's uncontroverted facts, its response expressly acknowledged the following facts:

> On September 1, 2017, Ozell Lincoln was <u>actually</u> injured and <u>actually</u> sought medical treatment at Plaintiff Truman Medical Centers as a result of a motor vehicle accident involving an unidentified/uninsured motorist. . . .
>
> . . . At the time of the September 1, 2017 motor vehicle accident, Ozell Lincoln was <u>a rated driver under</u> an automobile insurance policy with Defendant Progressive Casualty Insurance Company with uninsured motorist coverage limits ("UM") of $300,000 combined single limit. . . . [¶] . . . The insurance policy at issue was not Ozell Lincoln's insurance policy. The policy was issued to Say Yes, Inc.; Ozell Lincoln was only a "rater driver" under that policy.

4

Besides affirmatively alleging these facts, Truman's response did not dispute: that Lincoln had made a claim for uninsured motorist benefits under the Progressive policy; that he had settled that claim with Progressive; or that Truman's hospital lien claim was based on Progressive's failure to pay Truman when it settled Lincoln's claim for uninsured motorist benefits.

Thus, Truman either expressly admitted, or failed to controvert, each of the material facts on which the circuit court's summary judgment ruling depends. On appeal, Truman contends that the circuit court relied on two additional facts which were not put in issue by Progressive's summary judgment motion: (1) that Progressive did not itself cause Lincoln's injuries; and (2) that Progressive did not insure the person who caused Lincoln's injuries. Truman contends that the summary judgment ruling relies on a further, controverted fact: that Progressive was Lincoln's "own insurance company."

Truman's factual arguments are frivolous, and mischaracterize the record. Truman's response to Progressive's summary judgment motion affirmatively alleged that Lincoln was injured "as a result of a motor vehicle accident involving an *unidentified/uninsured motorist*." (Emphasis added.) If the motorist who injured Lincoln was "unidentified," there is no evidence that driver was affiliated with Progressive. Indeed, in its Reply Brief Truman acknowledges that it "has never asserted that [Progressive] caused Ozell Lincoln's injuries." Moreover, if the motorist who caused Lincoln's injuries was "uninsured," the motorist was – by definition – not insured *by Progressive*. Finally, whether the Progressive policy was issued to Lincoln, or whether he was instead merely a "rated driver" under that policy (as Truman alleged), the relevant fact remains: the policy provided uninsured motorist coverage to Lincoln; and that policy was not issued to, and did not insure, the "unidentified/uninsured motorist" who caused Lincoln's injuries.

Points I and II are denied.

5

## II.

In its third and fourth Points, Truman argues that the circuit court misapplied the law because Truman's hospital lien attached to the uninsured motorist benefits that Progressive paid Lincoln. We disagree.

Resolution of Truman's third and fourth Points requires that we interpret and apply Missouri's hospital lien statutes.

> We review questions of statutory interpretation *de novo*. Our primary rule of statutory interpretation is to give effect to the legislative intent as reflected in the plain language of the statute at issue. We will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result.
>
> A statute is ambiguous when its plain language does not answer the current dispute as to its meaning. Ambiguities in statutes are resolved by determining the intent of the legislature and by giving effect to its intent if possible. When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions. Rules of statutory construction are used to resolve any ambiguities if the legislative intent is undeterminable from the plain meaning of the statutory language.

*Truman Med. Ctr., Inc. v. Am. Standard Ins. Co.*, 508 S.W.3d 122, 124-25 (Mo. App. W.D. 2017) (citations and internal quotation marks omitted).

"Sections 430.225 to 430.250 establish the procedures hospitals and health practitioners must follow to secure a lien to recover amounts due for medical services rendered to a person injured by a tort-feasor." *Schoedinger v. Beck*, 557 S.W.3d 531, 534 (Mo. App. E.D. 2018). Truman relies on § 430.235 as the statute creating the hospital lien it seeks to enforce.[2] Section 430.235 provides in relevant part that qualifying hospitals

> shall have a lien **upon any and all claims**, counterclaims, demands, suits, or rights of action of any person admitted to any hospital . . . and receiving treatment, care or maintenance therein for any cause

---

[2] Section 430.230 also authorizes a hospital lien in certain scenarios. "[F]or the purposes of this opinion, the relevant language of each section is the same." *Morgan v. Saint Luke's Hosp. of Kansas City*, 403 S.W.3d 115, 118 n.2 (Mo. App. W.D. 2013).

6

including any personal injury sustained by such person as the result of the negligence or wrongful act of another, *which such injured person may have, assert or maintain against the person or persons causing such injury* for damages on account of such injury . . . .

(Emphasis added.)

Section 430.235 only creates a lien against "any and all claims . . . which such injured person may have . . . against the person or persons causing such injury." "The obvious purpose of § 430.235 is to allow a hospital a lien on the injured person's cause of action *against the tortfeasor* . . . ." *Frankum v. Hensley*, 884 S.W.2d 688, 691 (Mo. App. S.D. 1994) (emphasis added).

Section 430.235 makes no reference to a lien on insurance benefits. Other provisions of the hospital lien statutes _do_ refer to insurance coverage, however. Thus, § 430.225.1(1) defines a "claim" as "a claim of a patient for: (a) Damages from a tort-feasor; or (b) *Benefits from an insurance carrier*." (Emphasis added.) Section 430.225.1(6) in turn defines a "patient" to mean "any person to whom a . . . hospital . . . delivers treatment, care or maintenance for sickness or injury caused by a tort-feasor from whom such person seeks damages or *any insurance carrier which has insured such tort-feasor*." (Emphasis added.)[3] Finally, § 430.240 directs that notice of a lien must be provided to "*any insurance carrier . . . which has insured*" "*the person . . . alleged to be liable* to the injured party . . . for the injuries sustained." (Emphasis added.)

The definitions of a "claim" and "patient" in § 430.225.1, and the notice requirements of § 430.240, do not alter the fact that § 430.235 only creates a lien against claims which an injured person has "against the person or persons causing such injury." Nevertheless, "'[i]n determining the intent and meaning of statutory

---

[3] The language of § 430.225.1(6) is garbled; we presume it is intended to mean that a "patient" is a person who has received medical treatment for injuries caused by another, and who seeks to recover compensation for such injuries from the tortfeasor or from "any insurance carrier which has insured such tort-feasor."

7

language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words.'" *Cosby v. Treasurer of State*, 579 S.W.3d 202, 206 (Mo. 2019) (quoting *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. 2009)). We assume, without deciding, that the legislature intended the hospital lien created by § 430.235 to apply to <u>some</u> insurance benefits which are available to compensate an injured party for injuries caused by a third-party tortfeasor. Even on that assumption, however, the definitional and notice provisions refer only to insurance coverage which *insures the tortfeasor*.

Even if Missouri's hospital lien statutes are interpreted to grant a lien against insurance coverage which *insures the tortfeasor*, the statutory lien cannot be read to extend to uninsured motorist benefits provided by policies which insure *the injured party*. In this context,

> it is important to point out the distinction between first party claims and third party liability claims, as this distinction is critical to our analysis. When a policyholder asserts a claim against his own insurance company for underinsured or uninsured motorist benefits, he is making a first party claim. In contrast, when a policyholder is sued by a third party and seeks a defense or coverage in the event of a judgment against him, he is asserting a third party liability claim against his liability insurer.

*Charles v. Consumers Ins.*, 371 S.W.3d 892, 897 (Mo. App. W.D. 2012). First-party coverage insures against losses which the insured suffers directly. Third-party coverage, in contrast, insures the insured's liability for losses which third parties suffer on account of the insured's actions.[4] The distinction between first-party and third-party insurance coverage has multiple substantive implications (including with respect to the recognition of rights of subrogation; the existence of a common-law cause of action for an insurer's bad-faith failure to pay; the effect of an insured's

---

[4] *See generally*, 1 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 1.08[3], at 1-97 (2019); 14 COUCH ON INSURANCE § 198:3, at 198-6 to 198-7 (3d ed. 2005).

8

late notice of a potentially covered claim; and the right of an insured or injured party to bring a direct action against the insurer).[5]

A patient receiving medical treatment may have several types of first-party insurance coverage which could provide compensation to the patient (or the patient's survivors) for damages associated with the patient's injuries. Such first-party policies could include the patient's health insurance, disability insurance, life insurance, accidental death and dismemberment insurance, or homeowner's insurance.

We see no indication in the hospital lien statutes that the lien extends to rights an injured person may have under first-party insurance coverage which they, their family, or their employers may have procured for the injured person's benefit. Such first-party insurance coverage cannot fairly be construed to fall within § 430.235's reference to "claims . . . which such injured person may have . . . against the person or persons causing such injury."

The uninsured motorist coverage on which Progressive paid Lincoln is plainly first-party coverage, to which the hospital lien created by § 430.235 does not extend. Uninsured motorist coverage is required by Missouri's Motor Vehicle Financial

---

[5] *See, e.g.*, *Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5, 6 (Mo. 1987) (noting that common-law tort of bad-faith failure to settle applies to "an insurers' breach of their fiduciary duty in negotiating and settling third party claims against the insured," but that claims for vexatious refusal to pay first-party claims are generally governed by statute; citing *Duncan v. Andrew Cnty. Mut. Ins. Co.*, 665 S.W.2d 13, 19-20 (Mo. App. W.D. 1983)); *Benton House, LLC v. Cook & Younts Ins., Inc.*, 249 S.W.3d 878, 882 (Mo. App. W.D. 2008) ("Subrogation arises generally when a first party insurer pays its insured's property loss and, thereby, acquires its insured's right to pursue any third party who may have occasioned loss. It is inapplicable to a [third-party] liability insurer as in the case at bar."); *Billings Mut. Ins. Co. v. Cameron Mut. Ins. Co.*, 229 S.W.3d 138, 148 (Mo. App. S.D. 2007) (noting that the effect of an insured's late notice of a claim may vary depending on "the type of insurance coverage involved (e.g., first-party coverage with no obligation by the insurer to provide the insured a defense compared to third-party coverage with such an obligation to defend)"); *Bryan v. Peppers*, 175 S.W.3d 714, 722 (Mo. App. S.D. 2005) (noting that "it is permissible for a plaintiff to sue his insurance company directly when bringing a first-party claim, but it is impermissible to sue a liability insurer directly when bringing a third-party claim"; citations omitted).

9

Responsibility Law. Section 379.203.1 mandates that such coverage must be provided in every automobile liability insurance policy "*for the protection of the persons insured thereunder*," to compensate for bodily injury or death caused by uninsured motorists. Section 379.203.1 itself recognizes that such uninsured motorist coverage insures the injured party, <u>not</u> the tortfeasor. Missouri courts have consistently recognized that uninsured motorist coverage is first-party coverage. *Charles*, 371 S.W.3d at 897; *Shafer v. Auto. Club Inter-Ins. Exch.*, 778 S.W.2d 395, 398 (Mo. App. S.D. 1989) ("uninsured motorist coverage is designed to protect injured insureds"); *Otto v. Farmers Ins. Co.*, 558 S.W.2d 713, 718 (Mo. App. 1977) ("uninsured motorist insurance inures to an individual insured for bodily injury inflicted by the tortious act of an uninsured motorist"). Uninsured motorist coverage "is not based on the vehicle in which the insured is operating or riding, but instead is *personal coverage* which follows the *insured*." *Schmidt v. City of Gladstone*, 913 S.W.2d 937, 941 (Mo. App. W.D. 1996) (emphasis added; citation omitted).

We recognize that, in order to establish the right to uninsured motorist benefits, an insured must establish that they were injured through the culpable actions of an uninsured third party. We also recognize that, where an insurer contests an uninsured motorist coverage claim, the insurer "steps into the shoes of the alleged tortfeasor [to contest the tortfeasor's liability, or the extent of the insured's damages,] and assumes an adversarial position to that of the insured." *Charles*, 371 S.W.3d at 898 (citation omitted). Although an insured must establish the existence of a claim against the uninsured third party as a precondition to recovery of uninsured motorist benefits, uninsured motorist coverage remains first-party coverage which insures the injured party, not the tortfeasor.

Our holding that Truman's hospital lien does not extend to the uninsured motorist benefits provided by Progressive's policy is consistent with multiple out-of-

10

state cases interpreting similarly worded hospital lien statutes.[6]  We recognize that other out-of-state cases have held that hospital liens attach to uninsured motorist benefits.  The statutes at issue in those cases are worded differently – and more broadly – than the relevant Missouri statutes:  they often recognize a lien against any claim the injured party may have "because of," "on account of," or "based upon" their injuries.[7]  As we have explained above, § 430.235 is more limited, applying only to claims "against the person or persons causing such injury."

---

[6]   *Weston Reid, LLC v. Am. Ins. Grp., Inc.*, 94 Cal. Rptr.3d 748, 752, 754-55 (App. 2009) (statute recognized hospital lien against injured person's "claim against another for damages on account of his or her injuries," and required notice of lien to "any insurance carrier . . . which has insured the person . . . alleged to be liable to the injured person against the liability."); *Washoe Med. Ctr., Inc. v. Reliance Ins. Co.*, 915 P.2d 288, 289-90 (Nev. 1996) (hospital lien statute authorized a lien on "any sum awarded" when an injured person "claims damages from the person responsible for causing the injury"; statute required notice to any insurance carrier "which has insured against liability of the person . . . responsible for causing the injury and alleged to be liable for damages on account thereof and from which damages are claimed."); *Kratz v. Kratz*, 905 P.2d 753, 755-57 (Okla. 1995) (the title of the statute authorizing the hospital lien "explicitly restricts the reach of the statutory lien to proceeds recovered in a *personal injury* action from a tortfeasor or his insurer"; statute "provide[d] for notice only to a tortfeasor and his insurer").

[7]   *Marquez v. Progressive Ins. Co.*, 944 So.2d 876, 880-81 (La. App. 2006) (statute provided that hospital had a lien "on the net amount payable to the injured person . . . out of the total amount of any recovery . . . from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person"; court noted that statute "applies to *any* recovery and neither distinguishes nor differentiates between liability, [uninsured motorist], or med-pay insurance benefits"); *Stuttgart Reg'l Med. Ctr. v. Cox*, 33 S.W.3d 142, 144 (Ark. 2000) (statute authorized lien on "any claim, right of action, and money to which the patient is entitled because of that injury"); *Thomas v. McClure*, 513 S.E.2d 43, 45 (Ga. App. 1999) (hospital lien extended to "any and all causes of action accruing to the person to whom the care was furnished . . . on account of injuries giving rise to the causes of action and which necessitated the hospital . . . care . . . .'"); *Storey v. Univ. of N.M. Hosp./BCMC*, 730 P.2d 1187, 1188–89 (N.M. 1986) (hospital lien statute provided that hospital was "entitled to assert a lien upon that part of the judgment . . . belonging to [the injured] patient . . . based upon injuries suffered by the patient," and that "[a]ny person . . . . making any payment to a patient . . . as compensation for the injury sustained" would be liable to the hospital for the cost of patient's care); *Dade Cnty. v. Pavon*, 266 So.2d 94, 97 (Fla. App. 1972) (statute authorized lien "upon any and all causes of action . . . accruing to the [injured] persons . . . on account of illness or injuries giving rise to such causes of action"); *see also Broadway Clinic v. Liberty Mut. Ins. Co.*, 139 P.3d 873, 875 n.2, 877 (Okla. 2006) (physician's lien attaches to uninsured motorist benefits where statute provided that a physician "shall have, if the injured person asserts or maintains a claim against an insurer, a lien for the amount due for such medical services upon any monies payable by the insurer to the injured person").

Truman emphasizes that hospital lien statutes "were designed with a dual purpose: to ensure that injured patients are quickly treated without first considering if the patients are able to pay and to protect health care providers financially so that they could continue to provide care." *Kelly v. Marvin's Midtown Chiropractic, LLC*, 351 S.W.3d 833, 835 (Mo. App. W.D. 2011) (citation omitted). It argues that we can best advance the statutes' dual purposes by extending hospitals' lien rights to reach uninsured motorist benefits. But whatever the statutes' *purposes*, we are bound to apply their *plain language*.

> It is not our function to design rules of liability from the ground up . . . . We are enforcing a statute . . . . To the point that courts could achieve "more" of the legislative objectives by adding to [a statute's coverage], it is enough to respond that statutes have not only ends but also limits. Born of compromise, laws . . . do not pursue their ends to their logical limits. A court's job is to find and enforce stopping points no less than to implement other legislative choices.

*Edward Hines Lumbers Co. v. Vulcan Materials Co.*, 861 F.2d 155, 157 (7th Cir. 1988) (citation omitted). For the reasons we have explained in detail above, the text of § 430.235 cannot fairly be read to extend to the sort of uninsured motorist benefits which Progressive paid to Lincoln in this case.

Although not cited by Truman, we recognize that our decision conflicts with *Stefl v. Guyette*, 886 F. Supp. 693 (E.D. Mo. 1995). *Stefl* held that a Missouri hospital lien extended to underinsured motorist benefits provided by insurance policies which covered passengers injured in a motor vehicle accident. *Stefl* concluded, without discussion, that the hospital's "liens extend to all of the moneys payable to [the passengers] in satisfaction of their judgment against [the tortfeasor]," and thus included the underinsured motorist benefits to which the injured passengers were entitled. *Id.* at 698. *Stefl* contains no reasoned analysis of the language of § 430.235. Moreover, the Missouri case which *Stefl* cites to supports its holding – *Frankum v. Hensley*, 884 S.W.2d 688 (Mo. App. S.D. 1994) – involves a

12

lien asserted against *the tortfeasor's* insurance coverage; *Frankum* merely holds that the statutory hospital lien extends to "the injured person's cause of action *against the tortfeasor*." 884 S.W.2d at 691 (emphasis added).

"[F]ederal case law interpreting a Missouri statute is not binding on this court's interpretation of that statute." *Baker v. Century Fin. Grp., Inc.*, 554 S.W.3d 426, 436 (Mo. App. W.D. 2018) (citation omitted). For the reasons discussed above, we find *Stefl*'s interpretation of § 430.235 to be unpersuasive, and we decline to follow it.

"The plain meaning of the hospital lien . . . statutes indicates an intent that the hospital lien will not attach to [uninsured motorist benefits], and this Court can only apply the statutes as written." *Am. Family Mut. Ins. Co. v. Ward*, 774 S.W.2d 135, 138 (Mo. 1989); *see also St. Anthony's Med. Ctr. v. Metze*, 23 S.W.3d 692, 695 (Mo. App. E.D. 2000).

Points III and IV are denied.

### Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.

13